JAMES R. ATKINS *vs.* EDWIN L. FIELD.

Cumberland.    Opinion June 8, 1896.

*Negligence.    Fellow-Servant.    New-Trial.*

An employee is responsible to a co-employee for injuries caused by his negligence in the line of his duty to the common employer.

When the common employer approves the conduct of an employee without directing it, that does not free the latter from his responsibility to a co-employee, if he was in fact negligent.

When an employee personally selects the means and directs the mode of setting up apparatus furnished by the common employer, he becomes personally responsible to co-employees for injuries caused by his negligence in so doing;—and the fact that the work was satisfactory to the common employer, does not excuse the employee from the consequences of his negligence to others.

The foregoing rule does not apply where the common employer or his agent directs and controls the means and modes of setting up the apparatus.    There is responsibility only where there is freedom of action.

That a party was unable to procure the testimony of a particular witness in season for the trial, is no ground for a motion for a new trial.    The proper course for the party in such case is to move the presiding justice for the postponement of the trial.

His action will not be revised in any ordinary case.

ON MOTIONS AND EXCEPTIONS BY DEFENDANT.

This was an action on the case for personal injuries received by the plaintiff on the thirteenth day of July, 1894, by the fall of a derrick while in the United States government employ in the construction of fortification work at Cape Elizabeth.

The case was tried to a jury in the Superior Court, Cumberland County, where a verdict was rendered for the plaintiff for $3,100.

The facts are stated in the opinion.

Besides the general motion for a new-trial and a special motion founded upon newly-discovered evidence, the defendant took exceptions to the ruling of the presiding justice upon the admission of evidence and a refusal to give certain instructions to the jury.

From the bill of exceptions it appears that the counsel for the

defendant seasonably objected to the testimony of a witness, Freeman Willard, introduced by the plaintiff relative to the construction of the derrick and the iron eye-bolt connected therewith, and to the testimony of all the witnesses introduced by the plaintiff relating to the same subject matter, as appeared in a report of the testimony accompanying the motion for a new-trial, because he alleged that their construction concerned only the master or employer, the United States, or Col. Peter C. Hains who had the general charge and supervision of the work, but not the defendant who was the fellow-servant of the plaintiff; but over these objections, which were noted, and under the rulings of the court, these witnesses were permitted to state in regard to the same.

The court was requested to instruct the jury as follows:

1. That upon the master or employer (in this case the United States or Col. Peter C. Hains who had the general charge and supervision of this work) the law imposes the duty to furnish his servants for their work not the best machinery and appliances, nor those of the latest invention, but such as are suitable and may be used with safety; and the law imposes upon him the additional duty of taking care that this machinery and these appliances are kept in a safe and proper condition.

2. The defendant in this action is not liable to the plaintiff for defects in the construction of this derrick and the iron eye-bolts which were used to fasten the guys to. The construction of this derrick concerns the United States or Col. Peter C. Hains who had the general charge and supervision of this work; so that, so far as there was negligence in the construction of this derrick and these iron eye-bolts, as already stated (if that was the cause of the injury to the plaintiff) you may dismiss that from your minds.

3. That the defendant, if liable at all, is liable in his capacity as servant in the operation, and not in the construction of the machinery.

All these requested instructions were refused by the court except so far as given in the charge. The defendant further excepted to so much of the judge's charge as relates to the liability of the

defendant for the equipment and construction of the said derrick and the iron eye-bolt connected therewith.

The evidence in connection with the motion for a new-trial was made a part of the exceptions.

*Benj. Thompson,* for plaintiff.

*A. W. Bradbury and G. F. McQuillan,* for defendant.

Plaintiff and defendant were fellow-servants. A foreman, superintendent or overseer of a job of work is not on that account to be regarded as other than a fellow laborer with those who are at work under him. *Conley* v. *Portland,* 78 Maine, 217 ; *Osborne* v. *Morgan,* 130 Mass. 102. A servant is never liable to a third person merely for not doing that which it was the duty of the master to do. *Hill* v. *Caverly,* 7 N. H. 215, S. C. 26 Am. Dec. 735. The servant, as such, is liable to his fellow-servant for the personal neglect of his own duties, and not for the neglect of duties which the law imposes upon others. *Osborne* v. *Morgan,* 137 Mass. 1 ; *Rogers* v. *Overton,* 87 Ind. 410 ; *Griffiths* v. *Wolfram,* 22 Minn. 185 ; *Steinhauser* v. *Spraul,* 127 Mo. 541, Book 27, L. R. A., p. 441 ; *Greenberg* v. *Whitcomb Lumber Co.,* 90 Wis. 225, Book 28, L. R. A; *Hare* v. *McIntire,* 82 Maine, 240.

"The plaintiff must show in regard to the defendant he would hold, that that defendant had a duty in regard to the use of the apparatus, keeping it in repair and in condition to use, put upon him by the corporation, and that that duty, with the relation of the plaintiff himself to the defendants, was such as to involve some duty to the plaintiff; that the defendant violated that duty, and that the plaintiff did not." Per W. Allen, J., in *Osborne* v. *Morgan,* supra, and where he adds, "the plaintiff was not a fellow-servant with those who were engaged in constructing this machinery and appliance."

"Some confusion has crept into certain cases from a failure to observe clearly the distinction between nonfeasance and misfeasance. As has been seen, the agent is not liable to strangers for injuries sustained by them, because he did not undertake the performance of some duty which he owed to his principal, and

imposed upon him by his relation, which is nonfeasance. Misfeasance may involve, also, to some extent, the idea of not doing, as where the agent, while engaged in the performance of his undertaking, does not do something which it was his duty to do under the circumstances, — does not take that precaution, does not exercise that care, which a due regard for the rights of others requires." Mechem, Agency, § 572.

In *Lasky* v. *C. P. R. Co.*, 83 Maine, 461, PETERS, C. J., said: "An act done for the superintendent by his authority, either general or special, is his act. The employee is not required nor permitted to investigate the question of authority." See, also, *Griffiths* v. *Wolfram*, supra.

SITTING: WALTON, EMERY, FOSTER, HASKELL, WISWELL, STROUT, JJ.

EMERY, J. From the plaintiff's evidence, the admissions in the defendant's evidence, and from the rulings of the presiding justice, it may be safely inferred that the jury, in finding for the plaintiff, found a state of facts as favorable for the plaintiff, as the following:—

In the summer of 1894 the United States government was constructing a two gun battery at Portland Head through Lt. Col. Hains of the Engineer Corps of the U. S. Army, supervising officer in charge. The plaintiff Atkins, the defendant Field and numerous other civilians were employed by the government on this work,—the plaintiff as a laborer, the defendant as immediate and general overseer. In the prosecution of the work, it was necessary to set up and operate a large derrick, and to change its location from time to time. Such a derrick was purchased by the government and delivered on the ground at the battery. The defendant Field, in the line of his employment as overseer, personally assumed charge of the work of rigging and setting it up. He personally selected from the government stores the wire rope for the guys and gave directions to put only four guys on the derrick, though there were places for five guys. He also personally selected second-hand

inch and a quarter or inch and a half iron rods, and handed them
to the blacksmiths with directions to make them into a certain
form of bolts or pieces with which to fasten the guys to the rock
or ledge. He personally selected the places for thus anchoring the
guys, and personally directed the mode of the drilling the holes,
the insertion of the bolts, and the connection with the guys. It
did not appear that there was among the government stores on
hand at that place wire rope sufficient for more than four guys, or
iron rods of greater size or strength than those used;—nor did it
appear that the defendant made any application for more wire rope
or larger and better iron. The usual course of business was for
the defendant as overseer to apply to the engineer officer in charge
for any material needed, and for the latter to furnish it through
purchase or requisition.

In doing this work about the derrick the defendant acted upon
his own judgment in the first instance, though he called the atten-
tion of the engineer officer in charge to what he was doing, and
what material he was using, and obtained his ratification. It did
not appear, however, that this supervising officer ever gave the
defendant Field any specific directions about this particular work
or material other than to express his content with what had been
or was being done.

In June, 1894, after the derrick has thus been set up and used
for some time, the defendant as overseer undertook to change the
location of the mast. This involved the slackening and retighten-
ing of the guys, their anchorage not being changed. After the
mast had been shifted, three of the guys had been retightened, and
while a crew of men were retightening the fourth or southern guy
by means of a tackle and fall at its anchorage, the iron rod or bolt
at the foot of the northern guy, nearly but not quite opposite,
suddenly broke either from direct tension, or oblique break, and
the derrick as suddenly fell. The plaintiff was at work at the
time near the foot of the mast under the direction of the defend-
ant, and without fault on his part was injured by the falling mast.

Neither the plaintiff nor any of the workmen were in the employ
of the defendant, nor in any way his servants. They were all,

including the defendant, in the common employment of the government, through the government officer in charge.

The plaintiff alleged in his declaration that the defendant in setting up and moving the derrick was guilty of negligence in two respects: (1.) That he did not use a sufficient number of guys; (2.) That he did not use suitable pins or bolts suitably arranged to hold the guys and support the derrick. No other fault was alleged. The complaint was wholly of insufficient material and arrangement. The jury were plainly instructed that before they could determine the question of negligence in either respect, they must be satisfied that the defendant directly and personally, and not through other employees of the government, fixed the number of the guys and the quality, size and arrangement of the pins or bolts. The jury, therefore, in finding for the plaintiff must be assumed to have found that there was negligence, in one or the other of these respects, and that it was the negligence of the defendant.

The defendant contended at the trial that he was not responsible for any result of the negligence or misconduct of any of the workmen in setting up or moving the derrick, nor for the fall of the derrick, if it resulted in any way from such negligence or misconduct of the other workmen, they not being his servants. This contention was practically sustained by the presiding justice, and the case submitted to the jury upon the question of insufficiency in guys, and bolts, and fastenings, and of the defendant's direct personal control over them. This circumstance eliminates all other questions from our consideration of the exceptions.

The defendant now upon his exceptions contends that even upon the foregoing finding of facts he is not responsible for the insufficiency in the number of guys, nor for the insufficiency in the quality, size and arrangement of the bolts in fastening the guys to the ledge. The question of his responsibility for either of these deficiencies is the only question legitimately raised by his several exceptions.

His argument is, that he was only a co-servant with the plaintiff under a common master, the United States government, and

both taking orders from a common superior, Lt. Col. Hains; that the duty of furnishing safe machinery and appliances was upon the government, the common employer acting through its alter ego, the officer in charge; that all that he, the defendant, did in setting up and staying the derrick was done as an employee under the supervision of and with the approval of that officer; and that this approval by his superior relieves him from any responsibility therefor to his fellow-servants. He concedes that in operating the derrick, and even in changing its location, he was bound to be careful and diligent in his own conduct even toward fellow-servants. His claim for exception from liability is confined to the rigging and setting up the derrick, this being where he was held liable by the jury under the ruling of the court below. This work he contends was the duty of the common master, and hence was not his act, but the act of that master for which he is not responsible.

For the purposes of this opinion it may be conceded that, if in rigging and setting up the derrick, the defendant did not exercise his own judgment or discretion but simply followed the directions of a higher authority, he would not be responsible for any deficiency in material or arrangement. Responsibility arises only where there is freedom of action. It appears, however, that the defendant was practically untrammelled in this work. He selected the material. He omitted to ask for more or better materials. He personally determined the number of guys, and the quality, size and arrangement of the moorings of the guys. Colonel Hains, the officer in charge, did little if any more than acquiesce in the defendant's opinion and action. Representing the government, he was content so far as the government was concerned. He appears to have denied nothing, to have required nothing. Such subsequent or even cotemporaneus approval by superior authority may free the actor from all liability to that authority, but cannot free him from liability to other persons. The driver of a carriage may drive hurriedly through a crowded street with the full approval of his employer, but will nevertheless be responsible to all persons injured by his recklessness.

The plaintiff as directed by the defendant was at work near the derrick within range of injury from its possible fall. In the absence of notice to the contrary he could rightfully assume that whoever had rigged and set up the derrick had done so with proper material and in a careful manner. He was injured without fault of his, by the fall of the derrick, directly resulting from some lack of due care either in the material used, or in its arrangement. His injury, therefore, is directly attributable to whoever selected and arranged that material. The jury have found that the defendant was that person. His responsibility to the plaintiff follows logically and legally.

The defendant calls our attention to a distinction made in some cases between the misfeasance and mere nonfeasance of a person in the situation of the defendant. Such a distinction cannot avail here. If the defendant had not undertaken to rig and set up the derrick, or in so doing had simply executed the will of a lawful superior as to details of mode and material, there might be said to be mere nonfeasance on his part. But he did undertake the work and practically exercised his own discretion as to mode and material. He was then bound to act carefully in every respect, and his carelessness in any respect was a misfeasance.

The legal result thus arrived at has seemed to us so easily deducible from familiar general principles, that authorities need not be cited. We cite one case only for illustration. In *Cameron v. Nystrom*, (1893) app. ca. 308, the defendant was a stevedore employed in discharging a vessel;—the ship furnished the gear, but the stevedore set it up;—this was done so negligently that a part of the gear broke, letting fall a coil of wire upon the plaintiff, a seaman of the same ship, to his injury. It was argued that the plaintiff and defendant were co-servants under a common master, the owner or master of the ship; and that as the defendant did not furnish the gear he was not responsible for its breaking. The court held this to be no defense, and held that the defendant was responsible to the plaintiff for the negligence in setting up the gear.

Assuming our conclusions above stated to be correct, it is evident that all the requested instructions were properly refused.

The bill of exceptions further states that the defendant excepted "to so much of the judge's charge as related to the liability of the defendant for the equipment and construction of the said derrick, and the iron eye-bolt connected therewith;" neither the words nor the substance of the ruling complained of is stated. We are not bound to consider such an exception. It is too comprehensive and indefinite. Each exception in a bill of exceptions should be specific, pointed, and explicit, showing specifically and precisely what ruling is claimed to be error. *McKown* v. *Powers*, 86 Maine, 291; *Hamlin* v. *Treat*, 87 Maine, 310. It may be said, however, that the presiding justice upon that part of the case ruled in accordance with this opinion.

As to the motion to set aside the verdict as against evidence, we find the testimony conflicting as usual in such cases, but we do not find such a preponderance in favor of the defendant as constrains us to believe the jury were clearly wrong. The evidence for the plaintiff, if true, amply sustains all the propositions he was bound to prove, and we are not satisfied that it is untrue.

The damages seem to us large, but some of the evidence tends to show that the plaintiff, a young man, was badly and perhaps permanently injured. We hesitatingly conclude that the jury may not have erred.

As to the motion to set aside the verdict to let in the evidence of Lt. Col. Hains, it is clear that the evidence is not newly-discovered. It was well known to the defendant when the action was first brought. He later endeavored to procure it, but did not obtain it in season for the day set for the trial. He then properly asked the presiding justice for a continuance or postponement until he could obtain the evidence. This question of further delay was for the presiding justice to decide in the exercise of a sound judicial discretion. The law court will not revise his action unless it appears that he has clearly abused his discretionary power. The action was entered at the February term, 1895, of the Superior Court, and the writ was served at least fourteen days before that time. The location of Lt. Col. Hains, he being then stationed on Staten Island, New York Harbor, was well known to

the defendant, or at least easily ascertainable.  The defendant, however, did not file his interrogatories until the fourth day of the following May, although he was bound to assume that the plaintiff would press for trial at the May term.

The plaintiff did not impede or delay the defendant in any way but filed his cross-interrogatories on the next secular day and agreed upon a commissioner nominated by the defendant.  The presiding justice granted one postponement of the trial for nearly a week, but refused to delay the plaintiff further.  We cannot say that, under these circumstances, he abused his discretionary power in the premises.  We think he exercised it properly.  Litigants with trials in prospect must look early after their witnesses and documents.  Vigilantibus non dormientibus jura subveniunt.

*Motions and exceptions overruled.*